IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN MOSES, on behalf of herself and all others similarly situated, | Case No.1:14-cv-03131 |
| Plaintiff, | Honorable Dora L. Irizarry |
| v. | |
| APPLE HOSPITALITY REIT INC., GLADE M. KNIGHT,BRYAN PEERY, KENT COLTON, GLENN BUNTING, JR., LISA B. KERN, BRUCE H. MATSON, MICHAEL S. WATERS, AND ROBERT M. WILY, | |
| Defendants. | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Susan Moses ("Plaintiff"), on behalf of herself and of all others similarly situated, by their undersigned attorneys, for their Complaint against the above-named defendants ("Defendants"). This amended complaint is filed as of right under Fed. R. Civ. P. 15(a)(1)(B). Upon knowledge and investigation of counsel as to matters relating to themselves, and upon information and belief as to all other matters, allege as follows:

## NATURE OF THE ACTION

1.      This is a class action on behalf of all then-existing shareholders/unitholders and former shareholders/unitholders of Apple REITs Seven and Eight, now part of Apple Hospitality REIT[1], who purchased additional shares in the Apple REITs under the Apple REITs' Dividend Reinvestment Plan ("DRIP") between July 17, 2007 and February 12, 2014, inclusive ("Class Period").

---

[1] Referred to collectively as "Apple REITs" or the "Companies."

2.     This is a breach of fiduciary duty, constructive trust and unjust enrichment[2] action under Virginia law alleging that Plaintiff and the Class purchased Apple REIT shares in connection with the DRIP at inflated prices that did not reflect the true value of each Apple REITs Seven and Eight.

3.     Indeed, the prices at which Plaintiff and Class members purchased shares in connection with the DRIP were set unilaterally by Defendants who represented that the REITs were being sold at fair market value, while ignoring both internal and third-party reports that the actual value of these shares was much less.

4.     In the Apple REITs Seven and Eight S-3 public filings that created the DRIP, the boards of the respective companies represented that there were essentially two ways to price DRIP shares: (a) the "most recent price at which an unrelated person has purchased our units" represents the fair market value of our units" or, if the price is not indicative of fair value then; (b) in its good faith judgment, "our board determines that there are other factors relevant to such fair market value." *See* Apple REIT Eight, Form S-3, p. 8; Apple REIT Seven Form S-3, pp. 9-10.

5.     As shown below, the boards of directors of Apple REITs Seven and Eight ignored both of these metrics and simply kept the price at $11, despite: (a) unrelated persons purchasing the shares at lower values; and (b) the boards not using good faith judgment and recognizing the significant decline in Apple REITs shares/units.

6.     As further shown below, the Apple REITs' boards of directors did not take the purchases of unrelated persons into consideration when determining share value; and Apple REITs Seven and Eight suffered significant declines in value.

---

[2] Plaintiff has also pleaded a breach of contract claim in the alternative.

7.      Ultimately, Defendants later admitted in public filings (for the first time) that—despite representations that the boards of the Apple REITs would use the stated calculations to determine fair market value —the DRIP price was not based on *any appraisal or valuation* of the share prices. *See* Apple REIT Seven Form 10-K, March 2013, p. 16; and Apple REIT Eight Form 10-K, March 2013, p. 15.

8.      Plaintiff and the Class became aware of Defendants' bad faith conduct when the Securities and Exchange Commission issued an order fining the Apple REITs for overvaluing the stock price.

9.      Specifically, on February 12, 2014, the Securities and Exchange Commission found that "[i]n an effort to comply with the IRS framework, the Apple REITs, in language drafted by outside counsel, represented to unitholders in the DRIP registration statements that the DRIP unit price '[would] be based on the fair market value of [the REITs'] units as of the reinvestment date as determined in good faith by [their] board[s] of directors from time to time.'" *See In the Matter of Apple REIT Six Inc., et al.*, Order Instituting Cease and Desist Proceedings, Admin Proceeding No. 3-15750 ("SEC Order").

10.     The SEC order found that "[a]lthough the Forms S-3 disclosed that 'the per unit price for the plan will be determined at all times based on the most recent price at which an unrelated person has purchased our units,' the **Forms S-3 failed to disclose that the $11.00 unit price was not based on an appraisal of the Apple REITs' assets or other valuation methodology."** *Id.* (emphasis added).

11.     And, the SEC found that Apple REITs' representation that "[t]he per share estimated market value of common stock . . . is $11.00 per share" was materially misleading as

the Apple REITs failed to disclose that the $11.00 share price "did not reflect a meaningful estimate of the underlying or realizable value of the units." *Id.*

12.     As a result of the conduct, shown by public information and facts disclosed in the SEC order, DRIP participants were overcharged for each share they purchased/exchanged through the DRIP because the shares were sold to them at an inflated price.

13.     And, because Defendants calculated the unit distribution in the DRIP based on the $11 price, Plaintiff and the Class received less distributional value than if the prices were valued in good faith.

14.     During the Class Period, Class members are believed to have purchased approximately $124 million of Apple REIT Seven, and $99 million of Apple REIT Eight shares at inflated prices under the DRIP.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).   The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and this action is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant.

16.     Venue is proper under 28 U.S.C. § 1391(a) and (b) and 7 U.S.C. § 25(c), because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

*Plaintiff*

17.     Plaintiff Susan Moses is an individual residing in Brooklyn, New York. Ms. Moses is an Apple Hospitality REIT Inc. shareholder that held Apple REITs Eight and Nine

during the Class Period. Ms. Moses participated in Apple REIT Eight's DRIP and was damaged thereby.

**Corporate Defendants**

18. Defendant Apple Hospitality REIT, a consolidation of Apple REITs Seven, Eight and Nine, is a self-administered and self-managed real estate company. It is a Virginia Corporation with its principal place of business in Norfolk, Virginia. Apple Hospitality REIT's and its predecessors' shares were not listed on a national stock exchange, but the Companies did file reports with the Securities and Exchange Commission ("SEC").

**Officers and Directors ("Individual Defendants")**

19. The following are officers and directors of REITs Seven and Eight and are referred to collectively herein as the "Individual Defendants."

20. Defendant Glade M. Knight ("Knight") is the founder, chairman and Chief Executive Officer of Apple REITs Six, Seven, Eight, Nine, and Ten and now Apple Hospitality REIT.

21. Defendant Bryan Peery ("Peery") is the Executive Vice President and Chief Financial Officer of Apple REITs Six, Seven, Eight, Nine, and Ten.

22. Defendant Kent W. Colton ("Colton") was a director of Apple REITs Seven and Eight during the class period.

23. Defendant Glenn W. Bunting ("Bunting") was a director of REITs Seven and Eight during the class period.

24. Defendant Lisa B. Kern ("Kern") was a director of REIT Seven during the class period.

25.     Defendant Bruce H. Matson ("Matson") was a director of REIT Seven during the class period.

26.     Defendant Michael S. Waters ("Waters") was a director of REIT Eight during the class period.

27.     Defendant Robert M. Wily ("Wily") was a director of REIT Eight during the class period.

## THE INDIVIDUAL DEFENDANTS' DUTIES TO PLAINTIFF AND THE CLASS

28.     The Individual Defendants owed Plaintiff and the Class, as Apple REIT shareholders/unitholders, the duty to exercise a high degree of due care, loyalty, good faith and candor in dealing with the shareholders/unitholders of Apple REITs.  In particular, the Individual Defendants owed Plaintiff and the Class, as shareholders/unitholders, a duty of full disclosure of all material facts relevant to their transactions with Apple REITs, requests by Apple REITs for them to act, and otherwise.

29.     Whenever officers and/or directors communicate publicly or directly with shareholders/unitholders about the corporation's affairs, with or without a request for shareholder action, directors have a fiduciary duty to shareholders/unitholders to exercise due care, good faith and loyalty.  It follows that when directors communicate publicly or directly with shareholders/unitholders about corporate matters, the *sine qua non* of the directors' fiduciary duty to shareholders/unitholders is honesty.

30.     The focus of the fiduciary duty of disclosure is to protect shareholders/unitholders as the beneficiaries of all material information disseminated by the directors.  The duty of disclosure is, and always has been, a specific application of the general fiduciary duty owed by

directors.  The duty of disclosure obligates directors to provide the stockholders with accurate and complete information material to any transaction being presented to them for action.

31.     Shareholders/unitholders are entitled to rely upon the truthfulness of all information disseminated to them by the directors they elect to manage the corporate enterprise. Providing inaccurate information in the context of a request for a shareholder to engage in a transaction may result in a violation of the fiduciary duties of care, loyalty and/or good faith.

32.     The Individual Defendants controlled the dissemination of information to shareholders/unitholders (through SEC filings, letters to shareholders/unitholders and otherwise) and also controlled the prices at which the Apple REITs sold shares to its existing shareholders/unitholders pursuant to the DRIP.

33.     The Individual Defendants, individually and/or collectively, as alleged herein, breached their fiduciary duties to Plaintiff and the Class by (a) intentionally mispricing the stock sold through the DRIP program, and (b) making misstatements and omissions of fact concerning the true value of Apple REIT shares sold to Apple REITs' existing shareholders/unitholders under the DRIP.

## **SUBSTANTIVE ALLEGATIONS**

### *Background of the Apple REITs*

34.     Apple Hospitality REIT Inc. is the new name for the combination of Apple REITs Seven, Eight and Nine.  Its website boasts that it is "one of the large hospitality REITs in the U.S. with 188 continuing hotels that contain more than 23,000 guestrooms." *See* www.applehospitaility reit.com.

35.     Prior to the merger of Apple REITs Seven, Eight and Nine, Apple REITs Seven and Eight were non-traded REITs.  While they are formed as corporations, they are real estate

investment trusts for tax purposes. To qualify as real estate investment trusts, the Apple REITs were obligated to:

a. pay at least 90 percent of its otherwise taxable income to shareholders/unitholders;

b. derive most of its income from real estate held for the long term;

c. operate or manage its assets through a subsidiary which can be wholly owned by the REIT; and

d. be widely held.

36. The Apple REITs here—as well as the new entity—are not traded on a securities exchange, but sold through a single distributor, David Lerner & Associates, Inc. Because of the lack of transparent market value, it is especially important for these REITs to maintain proper internal controls to ensure that the REITs' valuation is accurate for the purposes of the dealings with its own shareholders/unitholders.

***Defendants Create DRIP Programs and Sell Shares Via the Misleading Forms S-3***

37. Apple REITs Seven and Eight created their Dividend Reinvestment Programs (DRIP) via Form S-3 filings on July 17, 2007, and April 23, 2008, respectively.

38. Each Form S-3 represented that:

**The price of units purchased under the plan directly from us by dividend reinvestments will be based on the fair market value of our units as of the reinvestment date as determined in good faith by our board of directors from time to time.** Our units are not publicly traded; consequently, there is no established public trading market for our units on which we could readily rely in determining fair market value.

Nevertheless, the board has determined that, for purposes of this plan, at any given time **most recent price at which an unrelated person has purchased our units represents the fair market value of our units**. Consequently, unless and until the board decides to use a different method for determining the fair market value of our units, the per unit price for the plan will be determined at all

times based on the most recent price at which an unrelated person has purchased our units. Notwithstanding the foregoing, **the board of directors may determine a different fair market value and price for our units for purposes of this plan if (1) in the good faith judgment of the board an amount of time has elapsed since our units have been purchased by unrelated persons such that the price paid by such persons would not be indicative of the fair market value of our units or (2) our board determines that there are other factors relevant to such fair market value**....

*See* REIT Eight, Form S-3, p. 8; Apple REIT Seven Form S-3, pp. 9-10.

### *Defendants' Determination of "Fair Market Value" Was Misleading*

39.     The S-3 represents that the Defendants had two ways to value the prices through the DRIP, via recently purchased shares from unrelated party; or through good faith judgment of fair market value in consideration of other factors.

40.     Yet, Defendants did not disclose that the determination of "fair market value" calculation was based on Defendants' set price, without regards to other purchases.

41.     Indeed, at the time of the S-3, Defendants had complete control of the price to sell the shares, so no "unrelated" person could buy shares at price that did not reflect the $11 price set by Defendants and Apple REITs.  And, to the extent an unrelated person could purchase shares on the secondary market, Apple REITs concealed that those shares would not be factored into the price determination.

42.     And even when unrelated persons did buy units at lower prices, Defendants refused to follow their own definition of fair market value to lower the $11 price for shares sold the DRIP participants.

### *Ignoring its Own Definition of Fair Market Value, the Board Continued to Sell Shares at $11, Despite Unrelated Parties Purchasing Shares at Lower Prices*

43.     Apple REITs' first method of determination of fair market value was not only misleading, but ignored.  Specifically, the definition stated that "at any given time the **most**

recent price at which an unrelated person has purchased our units represents the fair

market value of our units." *See above*, ¶33 (emphasis added).

44.    Apple REIT Seven disclosed that unrelated persons purchased units in the

company for much less than $11 per share.  Nevertheless, Apple REIT Seven's board continued

to sell shares into the DRIP at $11 per share, specifically:

> . . . bidders announced that they acquired 23,602 Units for $3 per Unit. In December 2011, the bidders announced that they acquired an additional 25,989 Units for $4 per Unit. The total Units acquired by these tender offers were 49,591, or approximately 0.05% of the Company's outstanding Units. The weighted average price paid for shares through the tender offer and the Company's Unit Redemption Program in 2011 was $10.85. In February 2012, the bidders made another tender offer for $5 per Unit. The offer expires in April 2012.

Apple REIT Seven, 10-K, March 2013

45.    Apple REIT Seven again misled shareholders, as the $10.85 was an average of the

unrelated purchases and the Company's own purchases through the DRIP, not unrelated persons.

46.    Apple REIT Eight similarly disclosed that unrelated persons had purchased units

for much less than the $11 DRIP price.  Nevertheless, Apple REIT Eight's board continued to

sell shares into the DRIP at $11 per share, specifically:

> . . . two tender offers made for the Units of the Company by the same bidders.  The weighted average price paid for the 17,403 (0.02% of the outstanding Units) acquired through the offers was $3.13 per Unit.  In February 2013, the same bidders announced a tender offer to purchase Units of the Company for $3.50 per Unit; unless extended, the offer expires in March 2013.

Apple REIT Eight, 10-K, March 2013

47.    Once again, the Companies' boards concealed that it was ignoring these

valuations for purposes of fair market value for shares in the DRIP.

48.    As a result, shareholders were overcharged and/or received less shares than they

were entitled to in each dividend distribution.

10

***Despite Declining Value, Apple REITs Seven and Eight Continue to Sell Shares at Full Price***

49.     As an alternative to pricing the shares based on sales to unrelated persons, the S-3 above warranted that all DRIP shares would be valued in a good faith determination by the boards.  Nevertheless, as shown below, in the face of significant declines, the board and the entities continued to sell shares at $11, the original, unilaterally set price for the DRIP shares.

*Apple REIT Seven*

50.     According to its public filings, Apple REIT Seven's shares declined each year, and by the end of 2012, had a book value of only $6.87.

51.     Nevertheless, as of March 2013, Apple REIT Seven was selling shares to DRIP plan participants at $11.00 per share.

52.     During this time, other important financial factors indicated significant declines in Apple REIT Seven including declines in net income (down to $18 million from $38 million) and net income per common share (down to $0.20 from $0.41).

53.     Accordingly, Apple REIT Seven shareholders were harmed by Apple REIT Seven and its board's choice to ignore the financial circumstances of Apple REIT Seven, while continuing to sell the REIT's shares above fair market value at $11.00 per share, when the shares were worth far less.

*Apple REIT Eight*

54.     As with Apple REIT Seven, Apple REIT Eight suffered similar declines.  Indeed, as of March 2013, Apple REIT Eight's book value was down to $6.67 per share.

55.     Nevertheless, as of March of 2013, Apple REIT Eight was selling shares to DRIP plan participants at $11.00 per share.

11

56.     During this time, other important financial factors indicated significant declines in Apple REIT Eight including declines in net income (down to $5.5 million from $14 million) and net income per common share (down to $0.06 from $0.16).

57.     Accordingly, Apple REIT Eight shareholders were harmed by Apple REIT Eight and its board's choice to ignore the financial circumstances of Apple REIT Eight, while continuing to sell the REIT's shares above fair market value at $11.00 per share, when the shares were worth far less.

### *Apple REITs Seven and Eight Essentially Halt Share Redemptions*

58.     Another indicator of the Companies' financial circumstances was the health of its share redemption program.  This program was directly tied to the Dividend Reinvestment Program, as the Dividend Reinvestment Program served as a source of cash for the company to buy back shares from shareholders.

59.     Specifically, the Companies redeemed Units with cash from a few sources: "including cash from operations, dividend reinvestment plan proceeds, proceeds from borrowings and asset sales from which it can make redemptions." March 2013 10-K.

60.     Apple REIT Seven, which previously fulfilled 100% of redemptions requests eventually only redeemed 6%, leaving millions of dollars of requested redemptions outstanding.

61.     Similarly, Apple REIT Eight, which previously fulfilled 100% of redemption requests, redeemed only 2% of redemption requests.

62.     The dramatic cutback in redemptions shows the companies' lack of resources to redeem shares, making each share less valuable.

63. The Companies, officers and directors made the decision to significantly cut back the redemption program, showing that they knew the financial health of the Companies had declined.

### Apple REITs Seven and Eight Admit, For the First Time, That the DRIP Shares are not Being valued in Good Faith

64. After misleading DRIP participants regarding Apple REITs Seven and Eight's fair market value and pricing formula, Apple REITs finally admitted in 2013 that the DRIP price was a price set by the companies and its officers and directors with no basis. Specifically, Apple REITs Seven and Eight made identical statements:

> **The price of $11.00 is not based on an appraisal or valuation of the Company or its assets.**

Apple REITs Seven and Eight 10-K (emphasis added).

65. This statement is in direct contradiction to its representation that the DRIP shares were going to be valued via the terms outlined in the S-3.

### The SEC Uncovers Evidence that Apple REITs Intentionally Misled Shareholders/Unitholders Regarding DRIP Prices in Apple REITs Seven and Eight

66. The SEC also recognized that Defendants' statements regarding the DRIP value misled the shareholder constituencies.

67. In February 2014, the SEC issued a Consent Order that shows the Forms S-3 for, *inter alia*, Apple REITs Seven and Eight (shown above) and Forms 10-K filed with the SEC were materially misleading.

68. These public filings were materially misleading in that "the disclosures omitted to state that the 'fair market value' of the units was not based on an appraisal of the Apple REITs' assets or other valuation methodology." The Apple REITs further "failed to disclose that, in contrast to an actively traded market, the price last paid for a DRIP share by an unrelated person

13

in the context of a non-traded REIT did not reflect a meaningful estimate of the underlying or realizable value of the units." SEC Order ¶27.

69.     In fact, the only support for the $11.00 market price was the fact that the Apple REITs had unilaterally set the price at $11.00, as the Form 10-K represented that the price was "supported by the fact that the [REITs are] currently selling shares to the public at a price of $11.00 per share through … Dividend Reinvestment Plan[s]." SEC Order ¶28.

70.     The SEC's investigation found that "Apple REITs management received internal strategic planning analyses between late 2008 and 2011 that contradicted the REITs' representations that $11.00 constituted the 'fair market value' of the units in their Form S-3 and the 'estimated market value' of the units in their Forms 10-K." SEC Order ¶28.

71.     Accordingly, not only were the Apple REITs selling shares at inflated prices, they were continuing to mislead shareholders/unitholders regarding the true market value of the shares.

72.     Indeed, the Apple REITs' boards refused to acknowledge that the market value was dropping as "[c]onsideration of the fair market value of the units for purposes of the DRIP was not included as a formal agenda item for board meetings." SEC Order ¶37. And, "[a]lthough the directors periodically discussed the DRIP program during board meetings, a record of substantive discussion concerning DRIP prices at board meetings does not appear in meeting minutes until February 2012 even though the DRIP programs for [Apple REITs Six, Seven and Eight] had been in place since 2006, 2007 and 2008, respectively." *Id.*

73.     In fact, the discussion at the board meeting in February 2012 was memorialized by the brief statement that the board of directions had "… a discussion concerning DRIP and

14

redemption pricing. Those in attendance considered the price currently paid ($11 per unit) to be appropriate and would reconsider if at some point it is warranted." *Id.*

74.    Accordingly, the SEC found that "the boards of directors operated under the theory that as long as there were DRIP sales, they did not need to reconsider the unit price." SEC Order ¶38.

75.    Despite these clear indications that Apple REITs Seven and Eight were overvalued, and failing to disclose that these valuations existed, Apple REITs continued to sell shares via the DRIP at $11.00 per share.  Because these sales were inflated, the DRIP participants were overcharged for each share/unit.

### *Apple REITs Seven, Eight, and Nine Become Apple Hospitality REIT*

76.    On August 7, 2013, Apple REITs Seven, Eight, and Nine agreed to merge. Defendant Knight was the only person to sign the merger document.  Subsequently, Apple REITs Seven and Eight merged into Apple REIT Nine, and Apple REIT Nine is now known as the Apple Hospitality REIT.

77.    Apple REIT Seven shares were converted to Apple REIT Nine shares on a one-to-one basis, while Apple REIT Eight shares were converted to Apple REIT Nine shares on a one-to-0.85 basis.

78.    Had Plaintiff and the Class' received the correct amount of shares, they would have received more shares of the Apple Hospitality REIT.

### CLASS ALLEGATIONS

79.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP").  The Class in this action ("Class") consists of all Apple Hospitality REIT Inc. unitholders, other than Defendants, their employees, affiliates and agents,

who had acquired Apple REIT Seven and Eight shares through those entities' Dividend Reinvestment Program.

80.   At least thousands of persons are believed to be members of the putative class ("Class"), and those persons or entities are geographically dispersed.  Therefore, joinder is impracticable pursuant to FRCP Rule 23(a)(1).

81.   Common issues of fact or law predominate over individual issues within the meaning of FRCP Rule 23(a)(2).  Common issues of law and fact include but are not limited to:

(i)    whether the Individual Defendants breached their fiduciary duties to Plaintiff and the Class;

(ii)   whether a constructive or actual trust should be impressed upon the ill-gotten gains obtained by Defendant Apple Hospitality REIT as fruit of its misconduct;

(iii)  whether Apple Hospitality REIT was unjustly enriched by its predecessors selling shares of Apple REITs Seven and Eight stock to Plaintiff and the Class pursuant to the DRP at inflated prices that did not reflect such shares' true economic value;

(iv)   whether the Individual Defendants breached duties to shareholders due to their conduct; and

(v)    the sum of damages and disgorgement of unjust enrichment due to Plaintiff and the Class.

82.   Plaintiff's interests are typical of, and not antagonistic to the interests of, the Class.

83.   Plaintiff has retained competent counsel experienced with class actions and complex litigation and intends to vigorously prosecute this action.

84.     Common issues predominate.  A class action is superior to all other methods for the fair and efficient adjudication of this controversy.  Indeed, a class action is the only method by which Plaintiff and the Class can efficiently seek redress and obtain a uniform adjudication of their claims.

85.     The size of individual damages is small in comparison to the complexity and scope of the Defendants' alleged unlawful conduct.  Plaintiff does not anticipate any difficulties in the management of this action as a class action.

86.     Defendants have acted or refused to act on grounds that apply generally to the Class, so that final judgment is appropriate respecting the Class as a whole.

**CAUSES OF ACTION**

**COUNT I**

**(Breach of Fiduciary Duty of Care Against the Individual Defendants)**

87.     Plaintiff incorporates and re-alleges each of her previous allegations as though fully set forth herein.

88.     The Individual Defendants, by virtue of their positions with the Apple REITs, owed Plaintiff and the Class a fiduciary duty to exercise a high degree of due care in dealing with Apple REITs shareholders/unitholders.  In particular, the Individual Defendants owed Plaintiff and the Class, as shareholders/unitholders, a duty of full disclosure of all material facts relevant to their transactions with the Apple REITs, requests by Apple REITs for them to act, and otherwise.

89.     Defendants breached these fiduciary duties to Plaintiff and the Class by artificially inflating the price of the stock sold to unitholders and making material misstatements

and omissions of fact concerning the true value of Apple REITs shares sold to existing

shareholders/unitholders under the DRIP.

90.     As a direct and proximate result of Defendants' breaches of their fiduciary duty,

Plaintiff and the Class members have been injured in their property and have suffered and

continue to suffer economic and non-economic losses, all in an amount to be determined

according to proof at trial.

## COUNT II

### (Breach of Fiduciary Duty of Loyalty Against the Individual Defendants)

91.     Plaintiff incorporates and re-alleges each of their previous allegations as

though fully set forth herein.

92.     The Individual Defendants, by virtue of their positions with the Apple REITs,

owed Plaintiff and the Class a fiduciary duty to exercise a high degree of loyalty and good faith

in dealing with Apple REITs unitholders.  In particular, the Individual Defendants owed Plaintiff

and the Class, as shareholders/unitholders, a duty of full disclosure of all material facts relevant

to their transactions with Apple REITs, requests by Apple REITs for them to act, and otherwise.

93.     Defendants breached these fiduciary duties to Plaintiff and the Class by

mispricing the stock sold to unitholders and making material misstatements and omissions of fact

concerning the true value of the Apple REIT shares sold to existing shareholders/unitholders

under the DRIP.

94.     As a direct and proximate result of Defendants' breaches of their fiduciary duty,

Plaintiff and the Class has been injured in their property and has suffered and continue to suffer

economic and non-economic losses, all in an amount to be determined according to proof at trial.

18

## COUNT III

**(Breach of Fiduciary Duty of Good Faith Against the Individual Defendants)**

95.　　Plaintiff incorporates and re-alleges each of their previous allegations as though fully set forth herein.

96.　　The Individual Defendants, by virtue of their positions with the Apple REITs, owed Plaintiff and the Class a fiduciary duty to exercise a high degree of loyalty and good faith when dealing with Apple REITs shareholders.  In particular, the Individual Defendants owed Plaintiff and the Class, as shareholders/unitholders, a duty of full disclosure of all material facts relevant to their transactions with the Apple REITs, requests by the Apple REITs for them to act, and otherwise.

97.　　Defendants breached these fiduciary duties to Plaintiff and the Class by mispricing the stock sold to unitholders and making material misstatements and omissions of fact concerning the true value of the Apple REITs shares sold to existing shareholders/unitholders under the DRIP.

98.　　As a direct and proximate result of Defendants' breaches of their fiduciary duty, Plaintiff and the Class members have been injured in their property and have suffered and continue to suffer economic and non-economic losses, all in an amount to be determined according to proof at trial.

## COUNT IV

**(Breach of Fiduciary Duty of Candor Against the Individual Defendants)**

99.　　Plaintiff incorporates and re-alleges each of their previous allegations as though fully set forth herein.

19

100.     The Individual Defendants, by virtue of their positions with the Apple REITs,
owed Plaintiff and the Class a fiduciary duty to exercise a high degree of candor and/or
disclosure to Apple REITs shareholders.  In particular, the Individual Defendants owed Plaintiff
and the Class, as shareholders/unitholders, a duty of full disclosure of all material facts relevant
to their transactions with the Apple REITs, requests by the Apple REITs for them to act, and
otherwise.

101.     Defendants breached these fiduciary duties owed to Plaintiff and the Class by
mispricing the stock sold to unitholders and making material misstatements and omissions of fact
concerning the true value of Apple REITs shares sold to existing shareholders/unitholders under
the DRIP.

102.     Defendants also breached their fiduciary duties by misleading shareholders as to
the calculation of the value of shares in the DRIP.

103.     As a direct and proximate result of Defendants' breach of their fiduciary duty,
Plaintiff and the Class has been injured in their property and has suffered and continue to suffer
economic and non-economic losses, all in an amount to be determined according to proof at trial.

## <u>COUNT V</u>

### (Constructive Trust Against Defendant Apple Hospitality REIT)

104.     Plaintiff incorporates and re-alleges each of her previous allegations as though
fully set forth herein.  This cause of action is asserted against Defendant Apple Hospitality REIT.

105.     Plaintiff's funds were wrongfully taken by Defendant Apple REITs pursuant to
Apple REITs' sales of shares to Plaintiff and the Class at inflated prices under the DRIP.

106.     Plaintiff seeks a constructive trust for those funds that they paid to the Apple
REITs over and above the true value of the Apple REIT shares sold to them under the DRIP.

## COUNT VI

### (Unjust Enrichment Against Defendant Apple Hospitality REIT)

107.    Plaintiff incorporates and re-alleges each of her previous allegations as though fully set forth herein.  This cause of action is asserted against Defendant Apple Hospitality REIT.

108.    At relevant times, Defendant Apple REITs received millions of dollars in funds from Plaintiff and other Class members.

109.    At relevant times, Defendant Apple Hospitality REIT received shares that belonged to Plaintiff and the Class.

110.    There now exists a substantial controversy between Defendants on the one hand and Plaintiff and the proposed Class on the other hand as to the ownership of monies and/or units in the possession of Defendant that lawfully belongs to Plaintiff and members of the proposed Class, in an amount not yet ascertained and transferred at a time or times not presently known to Plaintiff.

111.    By reason of the conduct alleged in the Complaint, Defendant has received a significant pecuniary benefit at the expense of Plaintiff and members of the proposed Class and has been unjustly enriched.  As such, Apple Hospitality REIT holds such assets in trust for the benefit of the Plaintiff and members of the Class and has a lawful or equitable duty to return such funds to their proper owners.

112.    Defendant has failed to return to Plaintiff and members of the proposed Class the money and/or units that lawfully belongs to them.  It is against equity and good conscience to permit Defendants to retain these monies/units that lawfully belong to Plaintiff and/or members of the proposed Class.

## COUNT VII

### (Breach of Contract – In the Alternative)

113.    Plaintiff alleges, in the alternative, in the event that there is a valid contract that governs the relationship between the parties, that Defendants breached that contract. Plaintiff incorporates all allegations except paragraph numbers 107-112.

114.    Defendant Apple Hospitality REIT Inc. is liable for actions of Apple REITs Seven and Apple REITs Eight.

115.    If a contract exists, part of the term of the contract was that the Apple REITs value the shares as set forth above.

116.    Despite knowing that unrelated parties were purchasing shares at prices lower than $11 per unit and that Apple REITs' value was declining, the Apple REITs and their agents continued to utilize the inflated share price.

117.    Defendants breached the contract by:  (1) not valuing the shares as set for in the S03; (2) acting in good faith in determining the share price; (3) misleading shareholders about how the DRIP units' price was calculated; (4) ignoring evidence that the units were worth less than $11 per share; and (5) continuing to sell units to DRIP plan participants at $11 per unit.

118.    Plaintiff and the Class were harmed by being overcharged and/or receiving fewer units than if the units were priced correctly and/or in good faith.

### JURY DEMAND

119.    Plaintiff demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment:

(a)    Ordering that this action proceed as a class action as to all claims

previously alleged;

(b)    Awarding money damages, including prejudgment interest, on each claim
in an amount to be established at trial;

(c)    Awarding attorneys' fees and costs;

(d)    Imposing a constructive trust on the ill-gotten gains of Defendants in the
ultimate res of which each Class member shall have an undivided interest,
and disgorging any and all sums by which Defendants has been unjustly
enriched;

(e)    Ordering an accounting of Plaintiff's and the Class's assets;

(f)    Directing further proceedings to determine the distribution of the trust
among Class members, *inter se*, and awarding attorneys' fees and
expenses to Plaintiff's counsel; and

(g)    Granting such other relief as to this Court may seem just and proper.

Dated: June 27, 2014

*Christine Goodrich*

ECCLESTON LAW OFFICES, P.C.
James J. Eccleston
Stephany D. McLaughlin
Christine E. Goodrich
One North Franklin Street, Suite 2620
Chicago, IL 60606
(312) 332-0000
(312) 332-0003 (Facsimile)
jeccleston@ecclestonlaw.com

SALAS WANG LLC
Jeffrey M. Salas (*pro hac vice* anticipated)
John C. Wang

23

155 N. Wacker Drive, Suite 4250
Chicago, IL 60606
Tel: 312.803.4963
Fax: 312.244.3151
jsalas@salaswang.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2014 the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

Richard Jarashow
Marshall Beil
1345 Avenue of the Americas
7th Floor
New York, NY 10105-0106

Elizabeth Edwards
One James Center
901 East Cary Street
Richmond, VA 23219-4030

Christine Goodrich