UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
SUSAN MOSES, on behalf of herself :
and all others similarly situated, :
:
                                 Plaintiff, :
:
                           -against- : **MEMORANDUM & ORDER**
: 14-CV-3131 (DLI)(SMG)
APPLE HOSPITALITY REIT INC., :
:
                                Defendant. :
------------------------------------------------------------ x

**DORA L. IRIZARRY, Chief U.S. District Judge:**

Before the Court is Apple Hospitality REIT Inc.'s ("Defendant") Motion to Dismiss the Second Amended Class Action Complaint, (Second Am. Compl. ("SAC"), Dkt. Entry No. 21), for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Mem. of L. in Supp. of Def's. Mot. to Dismiss ("Def's. Mem."), Dkt. Entry No. 25.) Plaintiff opposes. (*See* Pl.'s Mem. of L. in Opp. ("Pl.'s Opp'n"), Dkt. Entry No. 26.) For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## BACKGROUND

The Court assumes familiarity with the factual and procedural history of this action, as set forth in the Court's March 9, 2015, Memorandum and Order (the "Decision" Dkt. Entry No. 19.)[1] Nonetheless, the Court provides a brief summary of the case as it relates to this decision.

On March 9, 2015, the Court issued the Decision granting Defendants' motion to dismiss the First Amended Complaint ("FAC"). In the Decision, the Court dismissed all of Plaintiff's claims, but allowed Plaintiff to amend only her breach of contract claim. *See Moses v. Apple Hosp.*

---

[1] Unless otherwise indicated, the Court incorporates all party-name abbreviations and designations from the March Order in this Decision.

*Reit Inc.*, 2015 WL 1014327, at *8 (E.D.N.Y. Mar. 9, 2015). On April 6, 2015, Plaintiff filed the SAC on behalf of herself and all then-existing and former shareholders of Apple Hospitality's REITs Seven ("A7") and Eight ("A8") who purchased shares or "units" of A7 and A8 under Defendant's Dividend Reinvestment Program ("DRIP") between July 17, 2007, and February 12, 2014. (SAC ¶ 1.) While the FAC asserted claims against multiple defendants, the SAC includes a breach of contract claim against only Apple Hospitality REIT Inc. (*Id.* at ¶ 17.)

Plaintiff's main allegation is that Defendant breached its "contract with Plaintiff and the Class by mispricing shares sold through the DRIP." (*Id.* at ¶ 2.) The DRIPs were created through S-3 public filings ("Forms S-3"). The Forms S-3 determined the pricing of the shares and stated that shares of A7 and A8 would be priced by one of two methods: "(a) the most recent price at which an unrelated person has purchased our units represents the fair market value of our units or, if the price is not indicative of fair value then; (b) in its good faith judgment, our board determines that there are other factors relevant to such fair market value." (*Id.*) Plaintiff alleges that Defendant did not price the shares according to these methods, but instead kept the share price under the DRIP at a constant $11.00 per share. (*Id.* at ¶¶ 2, 27, 29-33.)

## STANDARD OF REVIEW

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), overruled in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6), a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Notably, courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g.*, *Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007).

## DISCUSSION

### I. Plaintiff's Standing to Assert the Claim Against Defendant

Since Plaintiff owned A8 shares, the parties do not dispute Plaintiff's Article III standing to assert the breach of contract claim on behalf of A8 investors. (Def's. Mem. at 11-12.) Instead, Defendant argues that Plaintiff lacks Article III standing to bring the claim on behalf of A7 investors because she never purchased A7 shares. Plaintiff asserts that she has Article III standing, and that Defendant's argument instead goes to the question of whether she has class standing, which should be addressed at the class certification stage. (Pl.'s Opp'n at 15-18.) The Court agrees that Plaintiff has Article III standing and that Defendant's argument is premature.

### A. Plaintiff Has Article III Standing

"[N]ot all standing is created equal, and, historically, courts in the Second Circuit have distinguished between Article III, statutory, and class standing." *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *5 (S.D.N.Y. Aug. 12, 2016). Article III standing "serves to identify those disputes which are appropriately resolved through the judicial process[.]" *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990). Article III of the Constitution mandates that a plaintiff have standing in order to maintain a lawsuit. To have standing, a plaintiff must demonstrate "(1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). The standing requirement does not change when a complaint is styled as a class action. The Supreme Court has stated "[t]hat a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal citation omitted).

In a class action, whether Plaintiff has class standing is distinct from Article III standing. *See e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp.3d 447, 481 (S.D.N.Y. 2014) ("[C]ourts in this district have recognized that the Second Circuit considers the questions of Article III, statutory, and class standing as distinct."); *Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of Am., NA*, 2013 WL 5328181, at *4 (S.D.N.Y. Sept. 23, 2013). Where class standing governs whether a named plaintiff could properly represent the interests of a class, Article III standing asks whether there is a case or controversy between the parties before the court. In *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir.

4

2012), the Second Circuit held that it was possible to have Article III standing without having class standing and analyzed both inquiries separately.

In *NECA-IBEW*, the plaintiff brought a putative class action alleging violations of the Securities Act of 1933 concerning mortgage-backed certificates. These certificates were sold in seventeen separate offerings, through seventeen separate trusts, and with seventeen separate prospectus supplements. *Id.* at 148-149. The district court found that the plaintiff lacked standing to bring certain claims on behalf of the purchasers of certificates from fifteen of the seventeen trusts because the plaintiff only had purchased certificates from two of the trusts and had not demonstrated that the alleged injuries from those two trusts were the same as those suffered by purchases of the other certificates. *Id.* at 154. The Second Circuit reversed and first addressed the plaintiff's Article III standing and then its class standing. The Second Circuit found that the plaintiff had "Article III standing to sue defendants in its own right because it plausibly alleged (1) a diminution in the value of the [the certificates the plaintiff purchased] (2) as a result of defendants' inclusion of misleading statements in the [accompanying] registration statements and associated prospectuses that is (3) redressable through rights of action for damages under [the Securities Act of 1933]." *Id.* at 158.

After addressing Article III standing, the Second Circuit evaluated the named plaintiff's class standing. *Id.* In *NECA,* the Second Circuit reviewed Supreme Court case law and held that the "broad standard for class standing ... in a putative class action [is that] a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Id.* at 162 (internal citations and alterations omitted). Applying the

standard, the Second Circuit determined that the district court erred when it required NECA to demonstrate that its "injuries [were] the same" as those "suffered by purchasers of [Certificates from]" differing trusts backed by "distinct sets of loans." *Id.*

Prior to analyzing the question of class standing, the Court must determine whether the named plaintiff has Article III standing to sue defendant "in its own right." *Id.* at 158*; In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp.3d at 481. Defendant asks the Court to dismiss claims relating to Apple REIT Seven" because "it is beyond dispute that Plaintiff lacks standing to assert claims with respect to Apple REIT Seven." (Def's. Mem. at 12.) This argument is misplaced because such contentions do not affect Plaintiff's Article III standing. The Second Circuit has held that "once there is at least one named plaintiff for every named defendant 'who can assert a claim directly against that defendant, ...[Article III] standing is satisfied and only then will the inquiry shift to a class action analysis.'" *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *11 (E.D.N.Y. Aug. 29, 2013) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.,* 504 F.3d 229, 241 (2d Cir.2007)). That standard is met in this case.

Here, it is undisputed that Plaintiff has Article III standing to sue Defendant in her own right based on the allegations that she was injured as a result of participating in A8's DRIP. Plaintiff alleges only one claim against one defendant; therefore, this single claim establishes a case or controversy between the only named plaintiff and the only named defendant regardless of whether Plaintiff purchased A7 shares. *See Policemen's Annuity & Ben. Fund of the City of Chicago*, 2013 WL 5328181, at *5; *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp.2d 155, 175 n. 116 (S.D.N.Y. 2009) (refusing to dismiss claims for lack of standing where claims were not based entirely on notes named plaintiffs had not purchased). In *NECA-*

*IBEW*, "the Second Circuit was unconcerned that the important differences among the offerings and tranches imperiled the plaintiff's Article III standing." *Kacocha*, 2016 WL 4367991, at *9. Similarly here, Plaintiff's Article III standing is not extinguished or jeopardized simply because her claim contains allegations regarding A7 shares she did not purchase. Plaintiff has standing to assert her sole claim directly against the Defendant. Accordingly, Defendant's motion to dismiss for lack of standing is denied.

### B. Plaintiff's Class Standing

Once Article III standing is established, the Court must address class standing. Since *NECA-IBEW*, "[c]ourts are split as to whether plaintiffs have standing to assert claims relating to products they themselves did not purchase, but which are substantially similar to products they did purchase." *Brady v. Basic Research, L.L.C.*, 101 F. Supp.3d 217, 228 (E.D.N.Y. 2015) (internal citation and quotation marks omitted). Some courts, dismiss claims relating to unpurchased items at the motion to dismiss stage. *See e.g.*, *Hart v. BHH, LLC*, 2016 WL 2642228, at *3 (S.D.N.Y. May 5, 2016); *Elkind v. Revlon Consumer Prod. Corp.*, 2015 WL 2344134, at *4 (E.D.N.Y. May 14, 2015). Other courts deny motions to dismiss and address the question at the class certification stage. *See e.g., Kacocha*, 2016 WL 4367991, at *11; *Reid v. GMC Skin Care USA Inc.*, 2016 WL 403497, at *4 (N.D.N.Y. Jan. 15, 2016); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp.3d 283, 291 (S.D.N.Y. 2015).

Plaintiff contends that the Court should defer its decision as to whether Plaintiff has class standing, *i.e.*, standing to represent both A7 and A8 shareholders, until the class certification stage of the litigation. (Pl.'s Opp'n at 16-18.) The Court agrees. Here, Plaintiff has Article III standing to sue Defendant because she participated in A8's DRIP. Thus, the threshold issue "in every federal case, determining the power of the court to entertain the suit" is met. *Denney v. Deutsche*

7

*Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006). Since Plaintiff has Article III standing, the more prudent approach is to analyze class standing at the class certification stage because the Plaintiff has already established a case or controversy between the parties. "Article III standing requirements are not intended as a screen for potentially frivolous lawsuits, for there is certainly no independent constitutional barrier to the federal courts entertaining unsuccessful claims." *Baur v. Veneman*, 352 F.3d 625, 642 (2d Cir. 2003). Accordingly, Defendant's argument that Plaintiff lacks standing to represent individuals who participated in A7's DRIP is "under *NECA–IBEW*…premature and should be addressed at the class certification stage." *Mosely v. Vitalize Labs, LLC*, 2015 WL 5022635, at *7 (E.D.N.Y. Aug. 24, 2015); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *12 ("*NECA–IBEW* thus instructs that, because plaintiffs have satisfied the Article III standing inquiry, their ability to represent putative class members who purchased products plaintiffs have not themselves purchased is a question for a class certification motion."). [2]

## II. Plaintiff's Breach of Contract Claim

In the Decision, the Court held that Virginia law governed Plaintiff's breach of contract claim. *See Moses v. Apple Hosp. Reit Inc.*, 2015 WL 1014327, at *6. Defendant argues that the SAC fails to allege a breach of contract claim because the SAC does not identify Defendant's breach. (Def's. Mem. at 5-11.) As Defendant correctly notes, the issue before the Court is whether Plaintiff alleged sufficient facts to demonstrate that Defendant did not price the DRIP shares in the manner required by the Forms S-3.

---

[2] Defendant also argues that, unlike in *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *11 (E.D.N.Y. Aug. 29, 2013), where the putative class members all purchased products from the same company, here Plaintiff only dealt with A8 and not with A7. Thus, Defendant asserts that Plaintiff "is only entitled to pursue claims based on Apple REIT Eight's DRIP offering." (Reply Mem. of L. in Supp. of Def's. Mot. to Dismiss at 7, Dkt. Entry No. 27.) This argument also is premature because it places the class standing analysis before the Article III standing inquiry.

8

To allege a claim for breach of contract under Virginia law, a plaintiff must demonstrate "'(1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) injury or damage to the plaintiff caused by the breach of obligation.'" *Baird v. The Federal Home Mortgage Corp.*, 2016 WL 1271083, at *6 (W.D. Va. Mar. 29, 2016) (quoting *Sunrise Continuing Care. LLC v. Wright*, 277 Va. 148, 154 (2009)). "Whether a writing is ambiguous is a question of law, not of fact." *Virginia Elec. & Power Co. v. N. Virginia Reg'l Park Auth.*, 270 Va. 309, 315 (2005). A contract is ambiguous when "it may be understood in more than one way or when it refers to two or more things at the same time." *Online Res. Corp. v. Lawlor*, 285 Va. 40, 54 (2013) (internal citation and quotation marks omitted). If the contract is ambiguous, generally, "the meaning of the contract upon the evidence presented should be submitted to the jury." *Id.; Tuomala v. Regent Univ.*, 252 Va. 368, 374 (1996).

In the Decision, the Court held that the "Forms S–3 constituted a valid contract[.]" *Moses*, 2015 WL 1014327, at *6. Thus, the current dispute concerns the last two elements of the claim: whether Defendant violated an obligation under the contract and whether Plaintiff was injured as a result. The SAC alleges that Plaintiff was injured because "Defendant issued fewer shares to DRIP participants than the Apple REITs would have issued had the number of shares issued been based on a value calculated in the manner represented in the S-3s." (SAC ¶ 80.) Accepting this allegation as true, as the Court must do at this stage, Plaintiff has adequately pled the third requirement for a breach of contract claim under Virginia law.

Turning to the second and final element, whether Defendant violated or breached the obligation, the Court holds that Plaintiff has pled sufficiently that Defendant breached its obligation to price the units at the "fair market value of our units," which is "the most recent price

at which an unrelated person has purchased our units." (SAC ¶ 23.)[3] Accordingly, Defendant's motion to dismiss the breach of contract claim is denied.

The Forms S-3 explain how the units are priced:

> The Price of units purchased under the plan directly from us by divide reinvestments will be based on the fair market value of our units as of the reinvestment date as determined in good faith by our board of directors from time to time.
>
> Our units are not publicly traded; consequently, there is no established public trading market for out units on which we could readily rely in determining fair market value. Nevertheless, **the board has determined that, for purposes of this plan, at any time the most recent price at which an unrelated person has purchased our units represents the fair market value of our unit.** Consequently **unless and until the board decides to use a different method for determining the fair market value of our units, the per unit price for the plan will be determined at all times based on the most recent price at which an unrelated person has purchased our units.** Notwithstanding the foregoing, the board of directors *may* determine a different fair market value and price for our units for purposes of this plan if (1) good faith judgment of the board an amount of time has elapsed since our units have been purchased by unrelated persons such that the price paid by such person would not be indicative of the fair market value of our units or (2) our board determines there are other factors relevant to such fair market value.
>
> The most recent price paid by an unrelated person for a unit was $11.00 on June 25, 2007.[4] Accordingly, our board of directors has determined that the offering price for units purchased under the plan will initially be $ 11.00 per unit

(Dkt. Entry No. 21-1 at 12-13, 45) (emphasis added).

Plaintiff alleges that Defendant breached the contract because Defendant continued to sell shares at the $11.00 per unit price stated in the Forms S-3, although unrelated parties had purchased shares of both A7 and A8 at less than $11.00 per unit. (SAC ¶¶ 29-34; Pl.'s Opp'n at 11.)

---

[3] The Court takes judicial notice of the relevant SEC filings. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007)*; Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 2016 WL 634079, at *2 n. 1 (S.D.N.Y. Feb. 17, 2016).

[4] While A8's Form S-3 contains an April 15, 2008 date, the remaining pricing structure is unchanged. (*See* Dkt. Entry No. 21-1 at 12-13, 45.)

Defendant first argues that the term "our units" means shares purchased directly from A7 and A8 and, therefore, cannot include units purchased through third-party tender offers. (Def's. Mem. at 10-11.) The Forms S-3 indicate that the price is "determined at all times based on the most recent price at which an unrelated person has purchased our units." Here, the term "our units" is susceptible to more than one reasonable interpretation because nowhere does this provision or the S-3 define whether "our units" means units purchased directly from the company, or units purchased from third-parties. For instance, the fact that an individual may own A8 units and sell them to a third-party does not make those units any less Defendant's units, or affect Defendant's ability to refer to those units as "our units." *See generally Jones v. Harrison*, 250 Va. 64, 68 (1995) ("[W]e have stated on a number of occasions that we do not rewrite contracts to insert provisions that have been omitted by the parties."). As such, this ambiguity presents an issue of fact that cannot be resolved properly at this stage of the litigation.

Next, Defendant argues that it is not feasible that the Apple REITs promised to value the units according to the last price paid in any and all private sales of Apple REIT units. (Def's. Mem. at 11.) Once again, Defendant's reading of the contractual language is just one possible interpretation of the provision and the ambiguity cannot be resolved on a motion to dismiss. Without clear contractual language leading to Defendant's interpretation, the Court will not insert words into the contract that the parties did not include. *See Am. Standard Homes Corp. v. Reinecke*, 245 Va. 113, 122 (1993) ("Courts will not rewrite contracts; parties to a contract will be held to the terms upon which they agreed."); *Dominick v. Vassar*, 235 Va. 295, 300 (1988) ("However, a court is not at liberty to rewrite a contract simply because the contract may appear to reach an unfair result.").

Finally, Defendant asserts that, notwithstanding the third-party tender offers, the 10-K Forms demonstrate that the boards exercised their discretion provided under the Forms S-3 when they determined that they would not change the $11 per unit price. (Def's. Mem. at 10.) According to Defendant, this establishes that there was no contractual breach. The Forms S-3 provide that "unless and until the board decides to use a different method for determining the fair market value of our units, the per unit price for the plan will be determined at all times based on the most recent price at which an unrelated person has purchased our units." The 10-K Forms do not support the conclusion that the boards determined to use a different method because Defendant itself concedes that the "board never exercised this discretion, but rather continued to price the shares at $11.00 – just as it said it would do." (Def's. Mem. at 2, 4.) Thus, Defendant's motion to dismiss is denied.[5]

## III. Breach of the Implied Covenant of Good Faith and Fair Dealing

In her reply brief, Plaintiff argues that Defendant breached the implied covenant of good faith and fair dealing because Defendant did not comply with the Forms S-3. (Pl.'s Opp'n at 14-15.) Plaintiff alleges this claim in her brief, but not in the SAC.

Under Virginia law, "every contract contains an implied covenant of good faith and fair dealing; however, a breach of those duties only gives rise to a breach of contract claim, not a separate cause of action." *Frank Brunckhorst CO., L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp.2d 452, 462 (E.D. Va. 2008). A "breach of the implied duty of good faith and fair dealing must be raised in a claim for breach of contract, as opposed to a claim in tort." *Stoney Glen, LLC v. S. Bank & Trust Co.*, 944 F. Supp.2d 460, 465 (E.D. Va. 2013).

---

[5] Defendant supports its motion to dismiss the breach of contract claim with a case from the United States District Court for the Eastern District of Virginia, which dismissed plaintiff's breach of contract claim against A8 under similar facts. *Wenzel v. Knight*, 2015 WL 3466863, at *1 (E.D. Va. June 1, 2015). While this case is not binding on this Court, it also is not dispositive. In that case, the Court did not address explicitly the allegations pled by Plaintiff here that other individuals purchased units for less than $11.00 per unit. In *Wenzel*, the plaintiff only alleged that a third-party buyer had offered to purchase shares for less than $11.00 per share and that the company had rejected this offer. *Id.* at *2.

12

Here, Plaintiff's claim that Defendant breached the implied covenant of good faith and fair dealing must be dismissed because it was not sufficiently alleged within the breach of contract claim. *See Augienello v. Coast-to-Coast Fin. Corp.*, 64 F. App'x 820, 822 (2d Cir. 2003) (Summary Order) ("Nowhere in the complaint is there any mention of a duty of good faith and fair dealing, or allegation that the defendants breached such a duty."). Instead, Plaintiff seeks to raise the claim in her reply brief by citing to a few passing references in the Complaint that mention the words "good faith." (SAC at ¶¶ 34, 79 (2)). However, mere references to "good faith" without more are insufficient to assert a claim. Rather, Plaintiff must include non-conclusory references to the duty of good faith and fair dealing and its breach in the Complaint. *See Warnick v. True Commc'ns, Inc.*, 2016 WL 1411491, at *11 (E.D. Va. Mar. 15, 2016) ("Allegations of 'bad faith and unfair dealing in a contractual relationship' are sufficient to show a breach of the implied covenant."); *Stoney Glen,* LLC, 944 F. Supp.2d at 466 ("Plaintiffs bring their breach of an implied duty of good faith and fair dealing claim as part of their count for breach of contract…. Accordingly, Plaintiffs have raised the claim in the right context and the question becomes whether they have properly alleged a breach of the duty.").

The claim also must be dismissed because Plaintiff may not amend the Complaint through her opposition brief by asking the Court to read something into the Complaint that was not alleged. *See Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp.2d 909, 917 n. 9 (E.D. Va. 2004) (noting that it is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").

## **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss the SAC is granted in part and denied in part.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2016

/s/
DORA L. IRIZARRY
Chief Judge