UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN MOSES, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE HOSPITALITY REIT, INC.,<br><br>Defendant. | Case No.1:14-cv-03131(SMG) |

**RESPONSE TO OBJECTOR'S ARGUMENTS AT FINAL FAIRNESS HEARING**

Plaintiff Susan Moses ("Plaintiff") respectfully submits as follows in response to the arguments raised by Objector Dorothy Wenzel at the January 16, 2018 Final Fairness Hearing, and in further support of her motion for final approval of the settlement herein (ECF No. 70).

### I. *Objector Ignored Chief Judge Irizarry's Ruling*

The entire premise of Objector's argument ignores the fundamental reality of this case: that Judge Irizarry's opinion narrows the case to Plaintiff's breach of contract claim. Objector's purported "simple arithmetic" approach to damages assumes that the Class is at liberty to estimate a "fair market value" for A7 and A8 shares utilizing whatever methodology it wishes, which is inconsistent with the circumstances of this case.

In fact, as explained in Plaintiff's previous filings, Chief Judge Irizarry's opinion dated September 30, 2016 (ECF No. 30) states that "fair market value" as used herein arguably may refer to outside purchases of Apple REITs shares by unrelated third parties, articulating that (with respect to a determination of "fair market value" for sales under the DRIPs):

1

The Forms S-3 indicate that the price is "determined at all times based on the most recent price at which an unrelated person has purchased our units." Here, the term "our units" is susceptible to more than one reasonable interpretation because nowhere does this provision or the S-3 define whether "our units" means units purchased directly from the company, or units purchased from third-parties. For instance, the fact that an individual may own A8 units and sell them to a third-party does not make those units any less Defendant's units, or affect Defendant's ability to refer to those units as "our units." *See generally Jones v. Harrison*, 250 Va. 64, 68 (1995) ("[W]e have stated on a number of occasions that we do not rewrite contracts to insert provisions that have been omitted by the parties."). As such, this ambiguity presents an issue of fact that cannot be resolved properly at this stage of the litigation.

As Judge Irizarry wrote in distinguishing *Wenzel* from the case at bar: "In that case, the Court did not address explicitly the allegations pled by Plaintiff here that other individuals purchased units for less than $11.00 per unit. In *Wenzel*, the plaintiff only alleged that a third-party buyer had offered to purchase shares for less than $11.00 per share and that the company had rejected this offer." Op. at 2, n.5.

In these circumstances, any damages theory presented at trial would likely have to be based on the meaning of "fair market value" as a contractually defined term in this case and in light of Judge Irizarry's ruling quoted above. There likely would be no latitude for—let alone admissibility of—Ms. Wenzel's draft damages analysis based on the Bloomberg REIT Index, because "fair market value" in this case is a contractually defined term that means only "the most recent price at which an unrelated person has purchased our units." *Id.* at 9-10.

In view of the fact that her damages theory would likely be circumscribed by Judge Irizarry's ruling, Objector's argument that the prospect of a jury trial should have "scare[d] Defendant into the $20 to $30 million settlement which I think this case deserves," rings hollow. *See* Transcript, ECF No. 84 at p. 8[2]. And, Objector had no response to the real potential that third-party discovery may have significantly impacted the ultimate damages here.

---

[2]Further, the ambiguous nature of the contractual term "our units" suggests the possibility of a defense verdict if the jury accepted the Defendant's contention that the ambiguous contract language refers only to units purchased

In summary, Objector's arguments concerning the potential scope of damages herein ignore the limitations on potential damages suggested by Judge Irizarry's ruling, and should be rejected.

## II.     *Objector's Attempted Recharacterization of her Claim is Unpersuasive*

At the Final Fairness Hearing, the Court inquired why Ms. Wenzel believes that the settlement consideration herein is too low when her own case was dismissed and resulted in no recovery, and observed: "[O]ne wonders why you would argue that the likelihood of success on the case is so great that the Court should reject this settlement when obviously despite being very ably represented Ms. Wenzel wasn't able to muster a complaint that could get past motion practice." (Transcript, pp. 5-6)

In response, Objector's counsel stated as follows:

> The complaint that was filed [in *Wenzel]*, however, was not the same breach of contract claim that was brought here by these lawyers. Our breach of contract claim which was one of I think seven claims, it wasn't really the main claim.  It was a declaratory judgment count to have the Court declare that the declaration of the dividend constituted a contract.  Here they say the [S-3] constitutes a contract.  In addition, the focus of that claim was bad faith by the board of directors in ignoring the fair market value adhering to the $11 offering price despite the ample evidence found by the SEC in a cease and desist order that there were all kinds of indications of a dramatic, dramatically lower[inaudible] a fair market value.  So the case was different.  It did have a breach of contract claim and Judge Dearie did focus on that and said no breach of contract here.

(Transcript, p 6)[3]

Objector's attempted distinction is irrelevant.  Wenzel lost on her claims.  And despite her loss, Wenzel did not appeal that decision.  The Court correctly concluded at the Final

---

directly from the company- similar to the conclusion that Judge Gibney reached in the *Wenzel* case. *See Wenzel v. Knight,* No. 3:13-cv-432, 2015 U.S. Dist. LEXIS 70536 at *3-4 (E.D. Va. Jun. 1, 2015) ("the agreement imposed no duty on the board to monitor, evaluate, or appraise the share values. Instead, it gave the board *discretionary* power to change the valuation method for DRIP shares**.").**

[3] The stenographer apparently misunderstood or mistranscribed the name of the judge in the Eastern District of Virginia case, who was the Hon. John A. Gibney, Jr., U.S.D.J.

Fairness Hearing that Ms. Wenzel "took the same facts that these plaintiffs' lawyers had available, same documents and drafted what you thought was the strongest complaint you could draft… and you couldn't get past motions." (Transcript, p. 7) The Court also correctly observed that "Judge Irizarry's opinions are hardly a ringing endorsement of the strength of the plaintiff's case but rather an acknowledgment that they've pled enough to survive." *Id.*

Moreover, Wenzel's First Amended Complaint ("Wenzel AC", annexed as Exh. 1) does not support the distinction that Objector attempts to draw because that complaint's second cause of action was for breach of contract, and alleged that:

> The Individual Defendants contracted with Plaintiff and the Class by offering to have A-8 provide Plaintiff and Class members with an amount of A-8 stock equivalent to the dollar amount of the dividend declared and paid. Implied as part of the contract was the Individual Defendants' agreement and undertaking to use a fair and accurate value for the A-8 stock to be paid to Plaintiff and Class members in lieu of the dividend.

(*Wenzel* AC, ¶ 61)

Ms. Wenzel further alleged:

> Defendants breached their agreement with Plaintiff and other Class members by setting the value of A-8 stock and crediting them with A-8 stock that was worth less than the dollar amount of the cash dividend declared and paid to non-electing A-8 holders.

(*Wenzel* AC, ¶ 63)

Indeed, Judge Irizarry distinguished *Wenzel* from this action: "In that case, the Court did not address explicitly the allegations pled by Plaintiff here that other individuals purchased units for less than $11.00 per unit. In *Wenzel*, the plaintiff only alleged that a third-party buyer had offered to purchase shares for less than $11.00 per share and that the company had rejected this offer." Op. at 2, n.5.[4]

---

[4] In addition, the *Wenzel* AC did not reference the specific language in the S-3 for the A8 offering or the terms thereof in its breach of contract claim. *See id.* at *10 ("The first amended complaint does not identify which specific document or agreement constituted Wenzel's contract with the defendants… [n]onetheless, the Court will assume for

4

*III.    Conclusion*

Nothing in Objector's argument bears any relevance to the excellent result here.[5]

Objector's entire argument assumes the case has proceeded on a theory that was rejected by both Judge Irizarry and Judge Gibney. Accordingly, the objection should be overruled.

Dated:  New York, New York
        January 26, 2018

>                LAW OFFICE OF
>                CHRISTOPHER J. GRAY, P.C.
>
>                _____
>                By: Christopher J. Gray
>                Michael J. Giarrusso
>                360 Lexington Avenue, 14th Floor
>                New York, New York 10017
>                (212) 838-3221
>                (212) 937-3139 (fax)
>
>                SALAS WANG LLC
>                Jeffrey M. Salas
>                John C. Wang
>                73 West Monroe, Suite 219
>                Chicago, IL 60603
>                (312) 803-4963
>                (312) 244-3151 (fax)
>
>                ECCLESTON LAW, LLC
>                James J. Eccleston
>                Stephany D. McLaughlin
>                Christine Goodrich
>                55 W. Monroe, Suite 610
>                Chicago, IL 60603
>                (312) 332-0000
>                (312) 332-0003 (fax)
>
>                *Interim Class Counsel*

---

the purpose of this opinion that the Form S-3 Registration Statement represents what may be the terms of Wenzel's purported contract.")
[5] The $5.5 million result here is equal to approximately 25% of Plaintiff's the tender offer damages calculation.